UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PAULINE BORDES, | : | |
| Plaintiff, | : | Hon. Dennis M. Cavanaugh |
| v. | : | **OPINION** |
| | : | Civil Action No.: 04-5586 |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon the appeal of Plaintiff Pauline Bordes ("Plaintiff") from the Commissioner of the Social Security Administration's ("Commissioner") final decision denying her request for Supplemental Security Income benefits ("SSI"). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This matter is decided without oral argument pursuant to Rule 78. As detailed below, it is the finding of this Court that the Commissioner's decision is not based on a complete analysis supported by substantial evidence. In addition, the Commissioner's decision failed to evaluate the credibility of the Plaintiff's subjective complaints. Accordingly, the Commissioner's decision is remanded for further proceedings consistent with this ruling.

### I. Background

**A. Procedural History**

Plaintiff, alleging disability from severe medical impairments, filed an application for SSI on March 12, 1997. (R. at 102-05.) Her claims were denied initially. (R. at 56-57.) Plaintiff's unsigned, timely request for reconsideration was also denied. (R. at 58-61.) On February 25, 1998, Plaintiff filed an unsigned, timely request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 62-66.) The hearing took place on March 16, 1998. (R. at 20.) On August 23, 1999, the ALJ issued a partially favorable decision finding Plaintiff disabled as of April 26, 1996. (R. at 75-84.)

On September 1, 1999, Plaintiff filed an unsigned, timely request for review with the Appeals Council. (R. at 87.) On February 14, 2003, the Appeals Council remanded the matter to an ALJ for reevaluation. (R. at 88-91.) Upon remand, the ALJ reevaluated Plaintiff's case and issued a decision denying Plaintiff's application on August 27, 2004. (R. at 11-18.) On September 23, 2004, Plaintiff filed a signed, timely request for review with the Appeals Council. (R. at 250-51.) The Appeals Council denied Plaintiff's request for review on November 5, 2004. (R. at 5-7.) Upon that denial, the ALJ's ruling became the Commissioner's final decision. (R. at 6.) On November 18, 2004, Plaintiff filed the instant action.

**B. Factual History**

Plaintiff was born on December 14, 1948. (R. at 28.) She resided in North Carolina until she was in the fifth grade; at that point, she moved to New Jersey. Id. In New Jersey, Plaintiff received a ninth grade education. Id. She never received a general equivalency diploma. (R. at 39.) Plaintiff last worked for a cheese processing plant in August 1993. (R. at 28.) At that job, she was a production worker, who worked a production line, packaging, folding or doing general

maintenance. (R. at 29.) She spent 50% of her time sitting and the other 50% standing. Id. She spent approximately 5 hours a night (about once per minute) bending on the job. Id. She was also required to lift cases of cheese weighing approximately 25 pounds. (R. at 29-30.) The working environment was dusty and steamy. (R. at 30.) Plaintiff also complained that fumes from the glue machines filled the air. Id. The temperature varied between extreme hot and cold during the summer and winter months. Id.

Plaintiff complains that she is unable to work because of constant, severe pain in her shoulder and back, which radiates to her legs. Id. Plaintiff's back problems began on the job in 1981. Id. At that time, she went to a company doctor, who found nothing wrong. (R. at 191.) Occasionally, the pain caused her to leave work early, but it was not constant. (R. at 30.) Now, Plaintiff describes the pain as a constant, "grabbing pain" that feels "like it's pulling [her] to the side sometimes." (R. at 31, 32.) She claims that she is unable to bend, because at some point her spine "clicks." (R. at 31.) Similarly, Plaintiff has difficulty getting out of bed because she cannot sit up after laying down for too long. (R. at 32.) Plaintiff is pained by sneezing and any work that requires even minimal bending. Id. In addition, sitting for more than 30 minutes or standing for more than 15 minutes causes Plaintiff's back to become stiff and painful. (R. at 37.) Walking over one block causes Plaintiff back pain. (R. at 37-38.) She does not lift or bend, but estimates the ability to lift approximately 10 pounds. (R. at 38.) Plaintiff also takes Relafen and Naproxen for her arthritis in her back. (R. at 36.)

Medical evidence regarding Plaintiff's back problem date back to 1996. (R. at 175-77.) Dr. Ahmad noted pain and tenderness in the lumbosacral spine. (R. at 177.) He also noted that Plaintiff had restricted movement in her lower back. Id. Dr. Ahmad diagnosed Plaintiff with spinal sprain

and myositis, which is a swelling of the muscles. Id. Dr. Pollock, on April 24, 1996, concluded that Plaintiff's lombosacral radiculopathy caused her lower back pain and limited mobility. (R. at 186.) He attributed this condition to Plaintiff's work conditions. Id. Dr. Berman, on September 5, 1997, noted that Plaintiff suffered mild osteoarthritis, but "[found] no objective evidence of significant disease." (R. at 199, 193.) On October 9, 1997, Dr. Glaudbiger noted to a colleague that Plaintiff complained of continued back pain. (R. at 200.) On a previous visit, Plaintiff was prescribed Relafen and Flexerel and referred to a physical therapist. Id. The Bergen Pines Clinic also noted that Plaintiff suffered pain in her lower back on February 9, 1999. (R. at 228.)

On March 10, 1999, an MRI revealed that Plaintiff had a narrowing and water loss phenomenon in her lower back. (R. at 212.) In addition, Dr. Maker noted that the MRI revealed a herniated disc. (R. at 214-17.) He also noted a poor response to the physical therapy. (R. at 218.) As a result, Dr. Maker opined that Plaintiff's ability to lift and carry objects was severely limited. (R. at 220.) Furthermore, her ability to sit was limited to approximately one hour, because of her lower back pain. (R. at 221.) On May 3, 1999, Dr. Vassallo concluded that Plaintiff suffered from left side sciatic syndrome and a probable degenerative disc disease, which diminished her motion of the lower back. (R. at 242-43.) An X-ray, also taken May 3, 1999, revealed a normal lumbosacral spine. (R. at 245.) Nevertheless, on May 7, 1999, Dr. Vassallo assessed that Plaintiff's impairment affected her ability to lift and carry items weighing up to 10 pounds. (R. at 246.) He also concluded that she could sit for approximately 3 hours during an eight-hour workday and one solid hour without interruption. (R. at 247.)

Plaintiff alleges pain in her leg and shoulder as well as stiffness in her hands. (R. at 30.) The pain in her left leg is a dull ache that can span from hip to toe. (R. at 31.) Standing for more than

15 minutes or walking over a block causes soreness and pain in Plaintiff's legs and feet. (R. at 37-38.) The numbness in her big toe began in 1997. (R. at 32.) In addition, Plaintiff claims that her left shoulder constantly aches, especially when she is cold. Id. The soreness and stiffness in Plaintiff's hands occurs on a frequent basis, which prohibits her from performing tasks (such as pushing buttons) for more than brief periods. (R. at 33.) Her pain causes her to wake during the night. (R. at 38.) On April 26, 1996, Dr. Ahmad noted that Plaintiff had difficulty standing on her toes and on her heels. (R. at 177). In addition, Plaintiff found it painful to raise her legs or squat for examination. Id. However, on May 3, 1999, Dr. Vassallo noted that Plaintiff walked without a limp or struggle. (R. at 242-43.) Then, four days later, he came to the contrary conclusion that Plaintiff could not stand or walk for more than 2-3 hours during an eight-hour work day; that time was limited to one hour of uninterrupted standing. (R. at 247.)

Plaintiff claims to have difficulty breathing as well as blurry vision. (R. at 33, 39.) Dr. Rosner's treatment notes, from January 13, 1995, discuss Plaintiff's congestion and conjunctivitis. (R. at 187-90.) Plaintiff claims that the nine steps to her basement are enough to make her out of breath. (R. at 33.) She testified that she treats her pulmonary condition with flonase. (R. at 37.) On June 20, 1996, Dr. Hermele examined Plaintiff and concluded that she suffered from chronic bronchitis. (R. at 178-80.) Dr. Hermele assessed that Plaintiff's condition was "causally related to or exacerbated by ... exposure to ... pulmonary noxious agents." (R. at 180.) Dr. Berman, however, noted that Plaintiff made no mention of her pulmonary difficulties when he examined her on July 18, 1997. (R. at 191-93.) Chest X-rays, taken on July 23, 1997, showed that Plaintiff's lungs were clear. (R. at 198.) On October 23, 1996, Dr. Glatt diagnosed Plaintiff with chronic conjunctivitis in both eyes as well as chalazion in her left eye lid. (R. at 183.) Dr. Glatt opined that these

conditions were caused by Plaintiff's exposure at work. Id. He stated that her blurred vision and discomfort were the result of a partially permanent disability. Id. On July 18, 1997, Dr. Berman noted that Plaintiff's vision was 20/20 in the right eye and 20/40 in the left eye without correction. (R. at 191-92.) Plaintiff has stated that she corrects her vision problems with reading glasses. (R. at 39.) On February 3, 1998, Dr. Carabid noted that Plaintiff's eyes were red and swollen. (R. at 210.) One year later, on February 3, 1999, Plaintiff denied having either an eye condition or a lung condition. (R. at 232-33.)

Plaintiff has also alleged anxiety and depression. (R. at 185.) On April 24, 1996, Dr. Pollock conducted a neuropsychiatric examination on Plaintiff. (R. at 186.) He concluded that Plaintiff suffered from post-traumatic anxiety stress disorder due to her exposure to noxious fumes, dust and loud noises at work. Id. To the contrary, on April 18, 1997, Dr. Berman found Plaintiff to be "an alert, pleasant and comfortable woman in no distress." (R. at 192.) Other medical evidence also notes the absence of an anxious condition. (R. at 209.)

## II. Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Some types of evidence will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if

> the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to support his ultimate conclusions.  Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983).  "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001).  Thus, substantial evidence may be slightly less than a preponderance.  Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)).  In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence

7

>approaches an abdication of the court's duty to scrutinize the record
>as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). "[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001). "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

**A. The Five-Step Analysis for Determining Disability**

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Under the Social Security Act ("Act"), a claimant is eligible for benefits if she meets the income and resource limitations of 42 U.S.C. §§ 1382a & 1382b, and demonstrates that she is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. For the first two steps, the claimant must establish (1) that she has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). Given that the claimant bears the burden of establishing these first two requirements, her failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there. Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies her initial burdens she must provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. Id. If she cannot so demonstrate, the benefit eligibility analysis requires further scrutiny. The fourth step of the analysis focuses on whether the claimant's residual functional capacity sufficiently permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). If the claimant is found to be capable to return to her previous line of work, then she is not "disabled" and not entitled to disability benefits. Id. Should the claimant be unable to return to his previous work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant shall receive social security benefits. Yuckert, 482 U.S. at 146-47 n.5.

**B. The Record Must Provide Objective Medical Evidence**

Under the Act, proof of a disability requires objective, medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires

> medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonable be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ."). Furthermore, S.S.R. 96-7p provides that

> The adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that ALJ failed to consider his subjective symptoms where ALJ made findings that

10

complaints of pain and symptoms were inconsistent with objective medical evidence and claimant's hearing testimony); Williams, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves constitute disability").

### III.  Discussion

Plaintiff makes three arguments in support of her position that the Commissioner's August 23, 1999 decision should be reinstated.  First, Plaintiff argues that the Commissioner's review of that decision was fundamentally unfair.  (Pl. Br. 11-15.)  Second, Plaintiff contends that the Commissioner's final decision to deny benefits is unsupported by substantial evidence.  (Pl. Br. 16-18.)  Finally, Plaintiff argues that the Commissioner failed to appropriately evaluate the credibility of the testimony presented at the hearing.  (Pl. Br. 19-24.)  Each argument will be discussed individually.

**A. Fundamental Fairness**

Plaintiff contends that the Commissioner seeks to unfairly deprive her of the benefits awarded by the ALJ on August 23, 1999.  (Pl. Br. 11.)  Plaintiff explains that she never intended to request Appeals Council review.  (Pl. Br. 12.)  Instead, Plaintiff claims that the unsigned request for review (R. at 87) was the result of a clerical error.  (Pl. Br. 12.)  Following this line of reasoning, Plaintiff argues that the Appeals Council initiated its own review in violation of the regulations.  (Pl. Br. 11-12).  In addition, Plaintiff claims that she was never given adequate notice of the review.  (Pl. Br. 12-13.)  Because she was not notified, Plaintiff argues that she was unprepared to advance a sound argument before the Appeals Council.  (Pl. Br. 13.)  Thus, Plaintiff contends that fundamental

fairness requires the Court to reinstate the partially favorable decision issued on August 23, 1999. (Pl. Br. 11.)

In the words of Justice Frankfurter,

> Here we are concerned with the requirement of "due process of law"...Judicial review of [the Due Process] guaranty ... inescapably imposes upon th[e] Court an exercise of judgment upon the whole course of the proceedings in order to ascertain whether they offend those canons of decency and fairness which express the notions of justice of English-speaking peoples...An important safeguard against [applying a] merely individual judgment is an alert deference to the judgment ... under review.  But there cannot be blind acceptance.

Malinski v. New York, 324 U.S. 401, 416-17 (1945) (Frankfurter, J.).  The fundamental fairness aspect of the due process clause applies to proceedings before the Commissioner.  See Hummel v. Heckler, 736 F.2d 91 (3d Cir. 1984).  Thus, the Court may review the Commissioner's decision to determine whether it offended notions of decency and fairness, which are guaranteed by the right to due process of law.

Plaintiff contends that "[f]undamental fairness ... dictate[s] that a document must be signed in order to justify the legal action based thereon." (Pl. Br. 12.)  In this matter, Plaintiff filed three unsigned documents with the SSA. (R. at 58, 64, 87.)  The first document, which was unsigned and computer-generated, is Plaintiff's request for reconsideration.  (R. at 58.)  The second document is Plaintiff's request for a hearing, which is also unsigned and printed in the same format. (R. at 64.) The document at issue in this case is the third unsigned, "computer generated" document submitted to the SSA on behalf of Plaintiff.  (R. at 87; Pl. Br. 12.)  That document requested review by the Appeals Council after Plaintiff received a partially favorable decision. (R. at 75-87.)  Plaintiff now argues that the third document was the result of a clerical error. (Pl. Br. 12.)  However, prior to the

remand, Plaintiff's attorney failed to advance this argument. (R. at 46-47.) In addition, the only signed document submitted to the SSA was Plaintiff's second request for review by the Appeals Council, which came after the ALJ denied Plaintiff's application on remand. (R. at 250-51.) Unlike the previous correspondence, this document was signed and printed on letter-head paper. Id. Nevertheless, Plaintiff failed to advance the clerical error argument in this request for review. (R. at 250-51.) In light of this evidence, it seems that, prior to 2004, it was Plaintiff's practice to submit her requests to the SSA via unsigned, computer-generated documents. Thus, Plaintiff's argument that fundamental fairness requires the Court to reinstate the partially favorable decision is paradoxical; she asks the Court to respect some unsigned, computer-generated documents, which led to the partially favorable decision, while rejecting others. For this reason, the Court finds that notions justice and the canons of decency and fairness are adequately represented by the Commissioner's final decision.

Plaintiff's contentions that the Appeals Council violated the regulations and failed to provide adequate notice lack merit. (Pl. Br. 11-13.) As stated above, Plaintiff filed a request for review by the Appeals Council in the same manner she had filed all previous correspondence with the SSA. The Appeals Council did not initiate review on its own motion and Plaintiff did not dispute the issue with the Appeals Council. (R. at 87; 46-47; 250-51.) Furthermore, Plaintiff, in filing the request for review in the same manner she filed all previous requests, had notice of the action. Thus, the Appeals Council did not violate its regulations or its duty to provide the Plaintiff with adequate notice of the review.

### B. Substantial Evidence

Plaintiff argues that the Commissioner's decision denying the severity of her impairment is

13

unsupported by substantial evidence and, therefore, the Court should reverse the Commissioner's final decision. (Pl. Br. 18; Reply 1.)  Plaintiff notes, "although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  Further, Plaintiff argues that "the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." Id.  With references only to the evaluations of Dr. Maker and Dr. Vassallo, Plaintiff contends that the Commissioner's decision is clear error. (Pl. Br. at 16-18; R. at 214-23; 242-49.)  However, the Third Circuit has been careful to explain that "[t]he Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." McCrea, 370 F.3d at 360-61.  Because the record as a whole establishes that the Commissioner's decision is unsupported by substantial evidence, the Court remands the matter to the Commissioner for further proceedings.

   Plaintiff alleges that she is severely disabled due to back pain, shoulder pain and leg pain. (R. at 30.)  Notwithstanding, the record as a whole does not support those allegations.  When Plaintiff initially hurt her back, her doctor found nothing wrong with her. (R. at 191.)  Dr. Ahmad and Dr. Pollock found that Plaintiff had restricted movement and tenderness in her lower back, which caused pain and limited mobility. (R. at 177, 186.)  Dr. Berman noted that Plaintiff suffered only from mild osteoarthritis. (R. at 199.)  Plaintiff relies solely on the opinions of Dr. Maker and Dr. Vassallo (Pl. Br. 16-18), who diagnosed Plaintiff with a herniated disc, a probable degenerative disc disease, and left side sciatic syndrome. (R. at 214-17, 242-43.)  These opinions are directly

14

contrasted by the X-ray, from May 3, 1999, which revealed that Plaintiff had a normal lumbosacral spine. (R. at 245.) Dr. Ahmad noted that Plaintiff had difficulty walking, but Dr. Vassallo noted that Plaintiff walked without a limp or struggles. (R. at 177, 242-43.) Nevertheless, Dr. Vassallo then accessed Plaintiff as severely limited by her condition. (R. at 247.) The ALJ addressed this evidence (R. at 15-17) and properly determined that Plaintiff's back and leg pain did not result in a severe impairment. (R. at 18.)

However, Plaintiff also complains of stiffness in her hands, blurred vision, shortness of breath, and anxiety/depression. (R. at 33, 39, 185.) The ALJ did not address these impairments in his opinion. (R. at 11-18.) Instead, the ALJ hinted that Plaintiff alleged "multiple impairments," but failed to evaluate the evidence regarding those conditions. (R. at 17.) The Third Circuit has stated that the Commissioner must "analyze[] all evidence and ... sufficiently explain[] the weight he has given to obviously probative exhibits." Gober, 574 F.2d at 776 (emphasis added). If the Commissioner fails to do so, the Court cannot conduct an accurate review of the matter. Here, Plaintiff may suffer from "something beyond a ... 'combination of slight abnormalities which would have no more than a minimal effect on [her] ability to work.'" McCrea, 370 F.3d at 360. Because the ALJ failed to address Plaintiff's additional impairments, the Court cannot find that the Commissioner's decision is supported by substantial evidence. Thus, the matter is remanded to the Commissioner to make that determination.

### C. Credibility of the Testimony

Plaintiff also argues that the Commissioner's final decision, from August 27, 2004, is flawed, because it fails to evaluate the credibility of her subjective complaints. (Pl. Br. 19; see 20 C.F.R. § 404.1529(3)-(4); S.S.R. 96-7p.) The Commissioner does not contest this flaw in the ALJ's decision.

(Def. Br. 10-11.) Instead, the Commissioner argues that the case should be remanded subject to sentence four of 42 U.S.C. § 405(g). (Def. Br. 1). Pursuant to sentence four, the Court may issue an order to remand where the Commissioner has failed to make explicit findings or to have correctly applied the law and regulations. Melkonyan v. Sullivan, 501 U.S. 89, 101 (1991). It is clear from the previous discussion that the ALJ did not support his conclusions with substantial evidence or evaluate Plaintiff's subjective complaints. For this reason, the Court remands the matter to the Commissioner for further proceedings. On remand, the Commissioner should address Plaintiff's subjective complaints in addition to the medical evidence regarding her various impairments.

## IV. Conclusion

For the reasons expressed above, the Court remands the Commissioner's disability determination. Accordingly, this case is CLOSED.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

**Date: March 9, 2006**
**Orig: Clerk's Office**
**cc:   All parties**
      **File**